610 P.2d 465

John F. COOPER, Ronald Costin, Robert J. Garcia, Joe L. King, Ralph Moorehead, Jim R. Pell, Roberta Purdy, and Philip Stanley, Plaintiffs-Appellees,

v.

ARIZONA WESTERN COLLEGE DISTRICT GOVERNING BOARD, Charles McConnell, Walter Kamman, Harold R. Anderson, Austen Haydis, and John A. Currie, Defendants-Appellants.

No. 1 CA–CIV 4311.

Court of Appeals of Arizona,
Division 1,
Department B.

March 4, 1980.

Rehearing Denied March 28, 1980.

Review Denied April 22, 1980.

Craig, Greenfield & Irwin by Arthur P. Greenfield and Snell & Wilmer by Daniel J. McAuliffe, Phoenix, for plaintiffs-appellees.

Hunt, Stanley, Hossler & Rourke, Ltd., by Douglas S. Stanley and Rolle, Jones, Benton & Cole by Tom C. Cole, Yuma, for defendants-appellants.

## OPINION

O'CONNOR, Judge.

This is an appeal from a summary judgment granted by the trial judge in favor of appellees. Appellees were plaintiffs in a special action against the Arizona Western College District Board and its members to declare certain actions taken by the board as void and to enjoin the board from future violations of the open meeting law. Appellees are all former members of the faculty of Arizona Western College.

The adopted minutes of the appellants' board meetings reflect that the board members met in a special meeting January 11, 1977, and went into executive session twice during the day.[1] The minutes reflect that the meeting was adjourned in the late afternoon and an announcement was made that the next special meeting would be held January 18. The minutes reflect that the board met again the morning of January 12, 1977, and that a motion was passed stating the teaching contracts of the appellees would not be renewed "in lieu of what transpired on January 11, 1977." The board met again in a special meeting on January 18, 1977, and the minutes reflect the following:

Mr. McConnell read the following statement:

"There appears to be some confusion concerning the action of the Board of Governors last week in serving notices of non-renewal to certain members of the administrative staff and faculty whose names are as follows:

Ron Costin, Jim Pell, Phil Stanley, John Cooper, Roberta Purdy, Joe King, Ralph Moorehead and Robert Garcia. The above named persons will retain their present titles until their present contracts terminate, and their personnel records will so reflect. They will continue to pursue their normal duties except as the same may hereafter be modified by this Board in writing, delivered to the individuals affected.

Requests for a hearing by any of those persons above named before the Governing Board may be submitted within a reasonable length of time."

Mr. Currie moved the above action be approved. The motion was seconded by Mr. Kammann and unanimously CARRIED.

Affidavits were filed by appellees in connection with cross motions for summary judgment which indicate that six of the eight appellees were summoned to appear before the board on January 11, 1977, and a form letter was read to each of them stating that the board had determined not to renew their contracts of employment for the ensuing school year. Appellee Pell filed an affidavit indicating that he was summoned before the board on January 12, 1977, and the same form letter was read to him. Subsequently, each of the appellees received a letter dated January 12, 1977, identical to the one previously read to those who appeared before the board. Thereafter this action was filed.

Both appellants and appellees acknowledge no notice was posted announcing the meeting held January 12, 1977, but that timely notice was posted of the special meetings held January 11 and 18, 1977.

In granting appellees' motion for partial summary judgment and denying appellants'

---

1. The record does not disclose whether minutes were made of the executive sessions of the board. The parties have not argued the effect of a failure to have taken such minutes, if any, nor the effect of the provisions of A.R.S. § 38–431.03 B.

cross motion, the trial judge made certain findings and conclusions, including the following:

It is apparent from the facts of this case that while in executive session in the meeting of January 11, 1977, the Board took legal action in that they determined that the contracts of the plaintiffs would not be renewed. . . .

It is also apparent that the Board had discussed the matter in executive session and had made a decision when they called the plaintiffs in. . . .

The Board further failed to comply with the statute in that they did not advise the plaintiffs of their right to demand that such discussion or consideration occur at a public meeting. . . .

The meeting of January 12, 1977, was totally illegal in that no notice was given.
. . .

The meeting of January 18, 1977, took no independent legal action which would comply with the statute. The minutes show a reaffirmance of the action taken January 11th and 12th, 1977. . . .

This again affirms the intention of the Board to take the action they did on January 11, 1977, in executive session, and simply approves that action. It cannot by reference breathe life into a void act.

2. A.R.S. § 38–431 was amended by Laws 1978, Ch. 86, § 1, to read in part as follows:

2. "Legal action" means a collective decision, commitment or promise made by a majority of the members of a public body pursuant to the constitution, their charter or by-laws or specified scope of appointment or authority, and the laws of this state.
3. "Meeting" means the gathering of a quorum of members of a public body to propose or take legal action, including any deliberations with respect to such action.

3. A.R.S. § 38–431.01 was further amended by Laws 1978, Ch. 86, § 2, to require that additional matters be included in the minutes or that a recording be provided of all meetings of public bodies.

4. As amended in Laws 1978, Ch. 86, § 3, A.R.S. § 38–431.02 provides in part as follows:

MEETING OF JANUARY 11

Appellants argue that there are issues of fact as to whether the board took any legal action concerning appellees on January 11, 1977. Appellants also argue that A.R.S. § 38–431.03 does not preclude taking final action in executive session concerning an employment matter so long as the executive session is not held *for the purpose* of taking any final action or making any final decision. Appellants assert that the executive sessions on January 11, 1977, were not held "for the purpose" of taking any final action and, therefore, if any such action was taken, it would not be in violation of the statute. The relevant statutes in effect in 1977, were A.R.S. § 38–431 to § 38–431.08. The statutes were amended significantly in 1978, subsequent to the events which are the subject of this action.

In 1977, A.R.S. § 38–431(2) defined "legal action" as "a collective decision, commitment or promise made by a majority of the members of a governing body." [2]

A.R.S. § 38–431.01, as amended by Laws 1975, Ch. 48, § 1, provided in 1977 that all official meetings at which legal action is taken shall be public meetings, and the minutes shall include an accurate description of all matters proposed, discussed, or decided. [3]

A.R.S. § 38–431.02 [4] provided for the method of giving public notice of regular and special meetings:

B. If an executive session will be held, the notice shall be given to the members of the public body, and to the general public, stating the specific provision of law authorizing the executive session.
C. Except as provided in subsections D and E, meetings shall not be held without at least twenty-four hours' notice to the members of the public body and to the general public.
D. In case of an actual emergency, a meeting may be held upon such notice as is appropriate to the circumstances.
E. A meeting may be recessed and resumed with less than twenty-four hours' notice if public notice of the initial session of the meeting is given as required in subsection A and if, prior to the recessing, notice is publicly given as to the time and place of the resumption of the meeting or the method by which notice shall be publicly given.

B. If an executive session only will be held, the notice shall be given to the members of the governing body, and to the general public, stating the specific provision of law authorizing the executive session.

C. Meetings other than regularly scheduled meetings shall not be held without at least twenty-four hours' notice to the members of the governing body and the general public. In case of an actual emergency, a meeting may be held upon such notice as is appropriate to the circumstances.

D. A meeting can be recessed and held with shorter notice if public notice is given as required in subsection A of this section.

A.R.S. § 38–431.03 provided in part as follows:

A. This article shall not be construed to prevent governing bodies, upon majority vote of the members constituting a quorum, from holding executive session for only the following purposes:

1. Discussion or consideration of employment, assignment, appointment, promotion, demotion, salaries, disciplining or resignation of a public officer, appointee or employee of any governing body, except that with the exception of salary discussions, an officer, appointee or employee may demand that such discussion or consideration occur at a public meeting.

    \*    \*    \*    \*    \*    \*

B. Minutes of executive sessions shall be kept confidential except from members of the governing body which met in executive session.

C. No executive session may be held for the purpose of taking any final action or making any final decision.

In 1978, A.R.S. § 38–431.03 C was amended and provides that "No executive session may be held for the purpose of taking any legal action involving a final vote or decision."

A.R.S. § 38–431.05 provided that all business transacted in a meeting held in violation of the open meeting statutes is void.

A.R.S. § 38–431.07 allowed any person affected by a decision made in violation of the open meeting statutes to sue to require compliance with the statutes, to prevent future violations, or determine the applicability of the statutes to decisions of the public agency, and allowed the court to order such equitable relief as is appropriate in the circumstances.

The record discloses conflicting evidence regarding legal action taken by the board at its January 11, 1977, executive session. Although the form letter which was read to some of the appellees recited that the board had determined not to renew the employment contract, the deposition of appellant Currie and the affidavit of appellant McConnell state that a general discussion occurred at the executive sessions on January 11, concerning the renewal of contracts of employment, but no final action or decision was taken. On the state of the record, no partial summary judgment could be granted on this issue.

■ We do, however, agree with the trial court that the statutes quoted above do not permit the governing board of a public body to take any legal action as that term was defined in A.R.S. § 38–431 while in an executive session, whether or not the executive session was called for the purpose of taking such legal action. The Arizona Supreme Court in *Karol v. Board of Education Trustees*, 122 Ariz. 95, 593 P.2d 649 (1979), held that "the formulation of the intention not to offer a contract . . . is a 'legal action' within the meaning of A.R.S. § 38–431(2) and [the action must] be taken during a public meeting in conformity with A.R.S. § 38–431.01." 122 Ariz. at 96–97, 593 P.2d at 650–651. A.R.S. § 38–431.03 allows public bodies to hold executive sessions *only* for discussion or consideration of the purposes enumerated, but they may not take final legal action, make a decision, or reach a collective decision, commitment or promise in executive session. *Hokanson v. High School District No. 8*, 121 Ariz. 264, 589 P.2d 907 (1978). Therefore, for purposes of this appeal, it is immaterial wheth-

er the board took "legal action" on January 11. If such a decision was made on January 11, it would have been made in violation of A.R.S. §§ 38–431.01 and 38–431.03, and such action would be void.

Appellants also argue that the giving of notice to an employee is a purely ministerial act and does not require action of the board. The fact that other members of the staff of Arizona Western College could have given notice to appellees that their contracts would not be renewed does not alter the fact that in this instance the board itself made the determination at some point in time.

█ Finally, the trial court also determined that the board failed to comply with A.R.S. § 38–431.03 A(1) in that appellees were not advised by the board of their right to demand that the board's consideration of non-renewal of the contracts occur at a public meeting. We disagree with this conclusion of law by the trial court. There is no language in A.R.S. § 38–431.03 or elsewhere in the statutes which requires the public agency *to advise or inform* an officer, employee, or appointee that they have a right to demand consideration of employment matters at a public meeting. All persons are presumed to know the contents of the statutory provision. *Conway v. State Consolidated Publication Co.,* 57 Ariz. 162, 171, 112 P.2d 218, 222 (1941). There is no evidence in the record that any of the appellees ever made such a demand or request to the appellant.

## MEETING OF JANUARY 12

Appellants contend that there are issues of fact concerning whether the special meeting held on January 12, 1977, was merely a continuation of the January 11 meeting or was a separate meeting of the board. The trial court found that the January 11 meeting was adjourned, that the January 12 meeting was a separate meet-

ing, and that the required notice for the January 12 meeting was not given. A resolution was passed during the January 12 meeting stating that the appellees' employment contracts would not be renewed. Appellants point out that several media representatives knew about the January 12 meeting and attended the meeting and were present when the resolution concerning appellees was adopted.

Our review of the record reveals that appellant Currie stated in his deposition that the board determined on January 11 that it would continue the meeting on the morning of January 12 due to the lateness of the hour on January 11. Appellant Anderson stated in his deposition that the minutes of the meeting of January 11 were inaccurate when they recite that the meeting was "adjourned" at 4:45 P.M. Appellant McConnell also stated in his deposition that the meeting of January 11 was continued until January 12. On the other hand, all three men acknowledged that the minutes and tape recording of the January 11 meeting accurately reflect that the chairman said the meeting was "adjourned" and the next meeting would be held on January 18. It is also undisputed that the board subsequently approved the minutes of the January 11 meeting as written. No objection was raised at that time to the use of the word "adjourned." However, it is not necessary for us to decide whether the meeting on January 12 was a separate meeting or the continuation of a recessed meeting. Under either theory, proper public notice of the January 12 meeting was not given.

█ A.R.S. § 38–431.02 D provided that "A meeting can be recessed and held with shorter notice if public notice is given as required in subsection A."[5] A.R.S. § 38–431.02 A required filing a statement of where notices of meetings would be posted and required giving such public notice "as is

---

5. A.R.S. § 38–431.02 E, as amended by Laws 1978, Ch. 86, § 3, provides:

   A meeting may be recessed and resumed with less than twenty-four hours' notice if public notice of the initial session of the meeting is given as required in subsection A and if, prior to recessing, notice is publicly given as to the time and place of the resumption of the meeting or the method by which notice shall be publicly given.

reasonable and practicable as to the time and place of all regular meetings." We interpret A.R.S. § 38–431.02 A and D as requiring the posting at the designated place of public notice of the time and place of the continuation of a recessed meeting for such period of time in advance of the meeting as the trier of fact determines is reasonable and practicable under the circumstances. The record before us discloses that no notice of the January 12 meeting was ever posted at the place designated for posting of notices of meetings, and that the only public announcement of the intention of the board to reconvene on January 12 was a verbal announcement by the chairman of the board to those persons present sometime after he had announced adjournment at 4:45 P.M. on January 11. We agree with the trial court's determination that such action does not constitute the giving of notice as required by A.R.S. § 38–431.02 A and D for either a separate meeting or the continuation of a recessed meeting. The mere fact that some representatives of the press or media were actually present at the meeting and when the announcement was made does not constitute compliance with the statutory requirements. Therefore, the action taken by the appellants on January 12, 1977, at the meeting held on that date was void.

### MEETING OF JANUARY 18

■ The trial judge determined that the board's resolution adopted at the January 18 public meeting "reaffirmed" and approved the action taken on January 11 and 12, but that the board could not "breathe life into a void act." We disagree with the trial judge's conclusion, under the circumstances of this case, that the board could not validly approve and adopt at a public meeting the action which the board had previously taken.

We find no provision in the Arizona statutes relating to public meetings which precludes a public body from adopting at a subsequent public meeting action which was legally ineffective from a previous meeting of the public body. In *Spokane Education*

*Association v. Barnes*, 83 Wash.2d 366, 517 P.2d 1362 (1974), the Supreme Court of Washington upheld the action of a school district board in reapproving the non-renewal of teacher contracts which had originally been determined at a meeting held in violation of Washington's open meeting statute. *See also Grissom v. Board of Education*, 75 Ill.2d 314, 26 Ill.Dec. 683, 388 N.E.2d 398 (1979); *Jewell v. Board of Education*, 19 Ill.App.3d 1091, 312 N.E.2d 659 (1974). *But see Littleton Education Association v. Arapahoe County School District No. 6*, 191 Colo. 411, 553 P.2d 793 (1976); *Peters v. Bowman Public School District No. 1*, 231 N.W.2d 817 (N.D.1975).

In *Hokanson v. High School District No. 8*, 121 Ariz. at 267, 589 P.2d at 910–11, the court distinguished those matters which the statutes expressly authorize as the subject of an executive session from those matters not so authorized:

The public's right to know and to participate in the decision-making process frequently comes into sharp conflict with the need for confidentiality in certain areas. The disciplining of employees is one such area, where there is a legitimate need for confidential discussions. A.R.S. § 38–431.03 is clearly intended to establish an equilibrium between the public's desire for access and the governmental agency's need to act in private, short of reaching "a collective decision, commitment or promise."

On the other hand, in *Washington School District No. 6 v. Superior Court*, 112 Ariz. 335, 337, 541 P.2d 1137, 1139 (1975), the court considered the actions of a textbook advisory committee and stated in dictum:

The statute as amended forbids the members of a governing body from forming committees comprised of their own members which meet secretly to decide a particular matter and thereafter hold a public meeting to take the final necessary legal action.

In this case, the board initially met on January 11 in executive session to consider a matter expressly authorized by statute for an executive session—the question of

renewal of certain teaching contracts. Whether the board made a final decision in executive session is in dispute. The matter was discussed and acted upon at a public meeting on January 12, however, valid public notice of that meeting had not been given. At the next public meeting held on January 18, pursuant to proper public notice, the matter was again considered. The minutes of the January 18 meeting reflect that the "action" of the board in serving notices of non-renewal to appellees was "approved." We believe the same matter may be considered and adopted again by the board at a duly-noticed public meeting, when the matter so considered is one in which the statutes expressly allow to be discussed in executive session.

Appellees point to the deposition of appellant McConnell as evidence that the resolution passed by the board on January 18 was intended merely to clarify that appellants would continue to hold their jobs and their titles for the remainder of the year. Appellees note that there is no affidavit or deposition testimony in the record to show that the board intended to ratify the previous decision not to renew appellees' contracts. In a motion for summary judgment, neither the trial court nor the appellate court may weigh the evidence, and the failure of the opposing party to file controverting affidavits does not in and of itself make the granting of summary judgment appropriate. *Northern Contracting Co. v. Allis-Chalmers Corp.*, 117 Ariz. 374, 573 P.2d 65 (1977). The facts as revealed by the record must be viewed by this court in a light most favorable to the party opposing the motion for summary judgment. *Peterson v. Valley National Bank*, 90 Ariz. 361, 368 P.2d 317 (1962). The resolution itself is some evidence of the board's intention to reapprove and adopt the previous decision. We conclude that on the state of the record there is a genuine dispute as to the intention of the board in passing the resolution concerning appellees at the meeting held January 18, 1977. If the board's intention was to reapprove and adopt the decision previously made not to renew the appellees' contracts, then such intention must be given effect as a valid action of the board.

The judgment and findings of the trial court insofar as they are inconsistent herewith are reversed and remanded for trial.

EUBANK, P. J., and HAIRE, J., concur.