155 N.J. Super. 398 (1978)
382 A.2d 966
JOAN COLE, PLAINTIFF,
v.
WOODCLIFF LAKE BOARD OF EDUCATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided January 24, 1978.
*400 Messrs. Goldberg, Simon & Selikoff, attorneys for plaintiff (Mr. Theodore M. Simon, of counsel).
Messrs. Wittman, Anzalone, Bernstein & Dunn, attorneys for defendant (Mr. Walter T. Wittman, of counsel).
MORRISON, J.C.C., Temporarily Assigned.
This matter comes before the court on motion of plaintiff Joan Cole for summary judgment. Defendant Woodcliff Lake Board of Education has filed a cross-motion for summary judgment. This case concerns a personnel decision made by defendant and projects issues respecting our Open Public Meetings Act, or Sunshine Law, N.J.S.A. 10:4-6 et seq.
The material facts reveal that on March 29, 1977 defendant Woodcliff Lake Board of Education adopted a resolution at a public meeting terminating, effective May 31, 1977, plaintiff's probationary employment as secretary in the Woodcliff Lake school system. Plaintiff, on May 13, 1977, filed a complaint in lieu of prerogative writs seeking to invalidate the board's action, alleging that the board had failed to comply with the provisions of the Open Public Meetings Act, N.J.S.A. 10:4-6.
Plaintiff was hired by defendant board as secretary on a probationary basis by contract of April 15, 1974. This contract *401 was renewed twice, extending the period of plaintiff's employment to June 30, 1977. All three of plaintiff's contracts provided that either party could terminate said contract by giving the other party 60 days' notice in writing of such intention to terminate. A question of tenure of this employee is at issue, since, if the Board had not exercised its option of terminating plaintiff's contract as of May 31, 1977, plaintiff would automatically have gained tenure status on June 1, 1977.
The following sequence of events led to the board's determination to terminate plaintiff's contract of employment:
1. On March 15, 1977 a regularly scheduled public meeting was held by the board, at which time a resolution was adopted which stated in pertinent part:
BE IT RESOLVED that the Woodcliff Lake Board of Education will meet in private session at 8:00 a.m. on March 21, 1977 and on April 4, 1977 following the Reorganization Meeting to discuss the following:
1) Review the performance of individual personnel; * * * and further BE IT RESOLVED that the matters so discussed will be disclosed to the public as soon as such disclosure can be made without violation of the confidentiality of personnel.
2. At the same meeting on March 15, 1977 the board adopted a resolution to adjourn the regular public meeting to March 29, 1977 to conclude unfinished business of the board.
3. On March 16, 1977 a notice of said adjourned regular meeting scheduled for March 29, 1977 was mailed to The Record and The Local Review and was also posted in the Woodcliff Lake borough hall, the United States Post Office in the Borough and on the bulletin board of the board meeting room.
4. On March 21, 1977 the board met in closed session and reviewed plaintiff's performance record.
5. On March 29, 1977 the board met for its scheduled adjourned regular public meeting. The agenda for that meeting reflected in part that the board would act on "Other *402 Business  any other unfinished business of this Board ready for or requiring action at this time."
The minutes of this meeting reflect that the board unanimously adopted a resolution terminating its April 26, 1976 contract with plaintiff as of May 31, 1977.
6. On March 30, 1977 plaintiff was personally served with a copy of the board's resolution by the secretary to the board.
7. Subsequent communication between the parties ensued. Plaintiff requested the reasons for said dismissal, and defendant provided her with them. Plaintiff then asked to meet with the board to discuss the matter of her dismissal, and defendant replied, granting same. On April 30, 1977 plaintiff wrote a letter to the board requesting that the hearing be conducted before the full board of education in order to avoid a public discussion of the matter. This request was granted, but plaintiff requested alternate dates for the hearing and on the same date filed the complaint in the instant action.
8. Nonetheless, the board agreed to reschedule plaintiff's requested hearing for June 21, 1977, at which time a resolution was adopted enabling the board to go into private session to discuss with plaintiff the matter of her dismissal.
9. Following such discussions the board refused to change its decision of terminating plaintiff's contract of employment.
Firstly, plaintiff alleges that deliberations regarding the decision of defendant board of education to terminate her contract were held outside of the purview of the public on March 21, 1977, in violation of the Open Public Meetings Act, N.J.S.A. 10:4-6 et seq.
The Legislature has set forth the purposes behind the Sunshine Law in N.J.S.A. 10:4-7:
The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs *403 undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion * * *. [Emphasis supplied]
Thus, in its initial statement of purposes behind the Open Public Meetings Act, the Legislature has engrafted certain exceptions onto the idea of conducting government in the "sunshine."
These exceptions are particularized in N.J.S.A. 10:4-12(b) wherein the statute enumerates instances in which public participation is not required. The pertinent part of this list dealing with personnel decisions reads as follows:
(b) A public body may exclude the public only from that portion of a meeting at which the public body discusses:
8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.
The justification for permitting a governmental body to conduct a private hearing in matters concerning the employment, appointment or termination of any public officer or employee is that individual privacy might be invaded or damage to personal reputations may occur. Note, "Open Meeting Statutes, The Press Fights for the `Right to Know,'" 75 Harv. L. Rev. 1199, 1208 (1961). The safeguarding of individual privacy was also recognized by a New Jersey court as a policy justification for exempting personnel matters from the requirements of the Sunshine Law. *404 Jones v. East Windsor Reg'l Bd. of Ed., 143 N.J. Super. 182 at 191-192 (Law Div. 1976).
Plaintiff's position as probationary secretary with defendant board of education makes her a public employee within the meaning of N.J.S.A. 10:4-12(b)(8). Additionally, the matter discussed at the private session of the board on March 21, 1977 was a review of plaintiff's performance as a public employee. The board, in considering whether to renew plaintiff's contract for another year, would touch on matters that, if aired publicly, might damage plaintiff's reputation or her ability to secure other employment. Thus, the exemption under the act for discussions relating to personnel matters, N.J.S.A. 10:4-12(b)(8), would be applicable to this closed session of the board. Therefore, the holding of a private session by the defendant to evaluate plaintiff's job performance falls within N.J.S.A. 10:4-12 (b) (8) and does not constitute a violation of the Sunshine Law.
Plaintiff contends that the language of N.J.S.A. 10:4-12(b) (8), "unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting," implicitly requires that the board must notify plaintiff individually of its intention to evaluate her performance. Plaintiff alleges a violation of the Sunshine Law by defendant for failing to notify plaintiff and thus give her an opportunity to request that the matter be heard at a public meeting.
This is a matter of first impression for the court in New Jersey. A reasonable interpretation of the above-quoted language appended to N.J.S.A. 10:4-12(b) (8) is that it allows a group of employees in a situation in which their joint rights could be adversely affected by the public body's decision regarding a personnel matter to make a written request for a public hearing. Such a request pursuant to this language would be appropriate, for instance, if the board of education rendered a decision to the effect that school board *405 employees may not drive their automobiles to work. However, in the instant action, the subject of the board's discussions was a review of the performance record of an individual employee, whose rights in this situation are personal to plaintiff. The consequences of the determination to terminate plaintiff's contract of employment would in no way redound to other employees of the Woodcliff Lake school system. Therefore, a request for a public hearing in this case would be inappropriate under this latter clause of N.J.S.A. 10:4-12(b) (8).
Furthermore, the language of the act does not require that the public body first notify the affected individual of its intention to act and secure from that person a consent for it to act in private session. The onus is placed on the employees to make such a written request of the body to hold a public discussion.
Plaintiff in this case must have been aware of the fact that her contract with the board was due to expire soon and that a question of her securing tenure as secretary with the board was imminent. Thus, for all intents and purposes plaintiff was on notice that her contract of employment would be a subject of discussion when, on March 15, 1977, the board passed a resolution at its public meeting to hold a private session on March 21, 1977 in order to "(1) Review the performance of individual personnel." Yet, plaintiff never made such written request as provided for in N.J.S.A. 10:4-12(b) (8). In fact, after this resolution was adopted by defendant terminating plaintiff's contract, plaintiff, on April 30, 1977, wrote a letter to the board requesting that the hearing she had been granted to discuss the reasons for the termination of her employment be conducted in private. Having never requested that the matter of her employment be discussed by the board at a public meeting and later specifically asking for a closed session on the very same subject, plaintiff can be said to have waived her right to a public meeting. I am therefore satisfied that defendant has not violated the Sunshine Law in holding private deliberations *406 on the matter of plaintiff's contract without first notifying plaintiff that her employment was to have been a subject of discussion.
Plaintiff alleges that the board's action violated the Sunshine Law, N.J.S.A. 10:4-13, in that the resolution adopted at the March 15, 1977 public meeting of the board of its intention to hold a closed session on March 21, 1977, did not provide that this particular plaintiff's employment status was to be discussed. As referred to previously, although the Open Public Meetings Act requires that "all meetings of public bodies shall be open to the public at all times," N.J.S.A. 10:4-12, the act provides that public bodies may exclude the public from that portion of a meeting at which it discusses any of the items listed in subsection (b) of N.J.S.A. 10:4-12. Before conducting a closed session, however, N.J.S.A. 10:4-13 of the Sunshine Law requires the public body to first pass a resolution at a public meeting. This resolution must state "the general nature of the subject to be discussed; and b. * * * as precisely as possible, the time when and the circumstances under which the discussion * * * can be disclosed to the public."
The Attorney General commented on this issue in Formal Opinion 29-1976 (99 N.J.L.J.) in which he interpreted N.J.S.A. 10:4-13 in conjunction with N.J.S.A. 10:4-9(a), which states:
Except as provided by subsection b. of this section, or for any meeting limited only to consideration of items listed in section 7.b.[1] no public body shall hold a meeting unless adequate notice thereof has been provided to the public.
The Attorney General concluded that:
[T]he Open Public Meetings Act does not require a public body to provide "adequate notice" of a closed session provided that the public body, at a prior meeting, has passed a resolution stating the *407 specific items to be discussed in closed session. If the public body has not passed a resolution at a prior public meeting, then it must give "adequate notice" of the meeting to be held and, prior to going into closed session at that meeting it must pass the required resolution.
The interpretations of statutes rendered by the Attorney General, although not binding upon the court, often provide assistance to the court in construing a statute. Evans-Aristocrat Industries, Inc. v. Newark, 140 N.J. Super. 226, 229-230 (App. Div. 1976). The Attorney General has, in this jurisdiction, been recognized as possessing the duty of interpreting statutes. N.J.S.A. 52:17A-4(e); Keenan v. Essex Bd. of Chosen Freeholders, 105 N.J. Super. 271, 278 (Law Div. 1969).
Applying the above-cited Attorney General's opinion, the resolution of March 15, 1977 was passed at a regularly scheduled public meeting for which adequate notice was provided. This resolution stating that the board would engage in private discussions on March 21, 1977 to "Review the performance of individual personnel" met the requirements of N.J.S.A. 10:4-13(a). In addition, subsection (b) of N.J.S.A. 10:4-13 was complied with by the terms of the resolution which stated when the private matter could be revealed to the public, namely, "as soon as such disclosure can be made without violation of the confidentiality of personnel."
Finally, plaintiff alleges that the board failed to give adequate advance notice of its March 29 meeting, in violation of the Sunshine Law, N.J.S.A. 10:4-8(d) and N.J.S.A. 10:4-9. As mentioned previously with reference to N.J.S.A. 10:4-12 and 10:4-13, the agenda for that meeting need not specifically have stated that action would be taken on the matter of plaintiff's employment. There is no provision in the act which mandates that this particular plaintiff be individually notified.
"Adequate notice," for purposes of N.J.S.A. 10:4-9, is defined in N.J.S.A. 10:4-8(d) as: *408 * * * written advance notice of at least 48 hours, giving the time, date, location and, to the extent known, the agenda of any regular, special, or rescheduled meeting, which notice shall accurately state whether formal action may or may not be taken * * *.
Having stated at its meeting of March 15 that on March 21 the board would meet to "Review the performance record of individual personnel," the announcement that the agenda for March 29 was to "conclude unfinished business of the Board" included action on the matter of individual employee performance. The stated agenda therefore comported with the mandates of the Sunshine Law in providing adequate notice to the public of the action taken at the board's March 29 meeting.
The instant action is clearly distinguishable from the case of Crifasi v. Oakland Governing Body, 151 N.J. Super. 98 (Law Div. 1977), relied on by plaintiff as authority for her claim that adequate notice was not given. In Crifasi the nomination of a new councilman was held to be in violation of the Sunshine Law. The agenda was found to be inadequate in that case because the public body acted on a matter which was not included in the agenda. The court stated (at 102), "Thus, where a public body chooses to, and does publish an agenda of a public meeting, it may not take official action at the meeting respecting matters not scheduled on the agenda." Also, in that case the agenda of the Oakland council's meeting listed a number of items, such as lawn maintenance, snow removal, etc., the importance of which cannot be equated in the public eye with a matter of such significance as the filling of a vacancy of an elective office on the governing body. The court reasoned that the specification of these mundane items would not apprise the public of this issue of major public concern.
In contra-distinction, in the present case the board notified the public of its intention to review individual employment records, and acted on that matter at the March 29 meeting. No problem is presented in the instant case of the public body scheduling less significant matters on its *409 agenda and then acting on a matter of grave public concern not included in its list.
The present case is also distinguishable from a situation in which the single word "personnel" appears on the agenda and the subsequent action taken at the public meeting involves an issue of grave public concern, i.e., the board's determination to decline to renew the contracts of numerous teachers, abolish teaching positions, and restructure the entire teaching and curriculum program.
The matter of whether one secretarial employee's contract should be terminated is not an issue of public concern as is the determination with respect to the overall level of educational services. In a case in which a local board of education acts to restructure its curriculum and abolish numerous teaching positions, it is understandable why the mere designation of the word "personnel" on the agenda would be insufficient to inform the public of such a significant policy action. In the instant case the board of education of Woodcliff Lake's listing on the agenda stated more than just "personnel"  that is, to "review the performance of individual personnel"  and was sufficient to inform the public of the minor personnel decision made at the meeting.
In conclusion, the board did not violate any provisions of the Sunshine Law in terminating plaintiff's contract of employment, and therefore the board's action should stand.
Plaintiff's motion for summary judgment is hereby denied and defendant's cross-motion for summary judgment is hereby granted.
NOTES
[1] [Section 10:4-12(b)]